*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0352p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee/Cross-Appellant,*

  *v.*

JOMILL GONZALEZ,
  *Defendant-Appellant/Cross-Appellee.*

Nos. 06-3303/3387

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-00434—David D. Dowd, Jr., District Judge.

Argued: July 25, 2007

Decided and Filed: August 30, 2007

Before: COLE and GILMAN, Circuit Judges; MARBLEY, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Gordon S. Friedman, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellant. Robert J. Becker, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee. **ON BRIEF:** Gordon S. Friedman, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellant. Robert J. Becker, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Jomill Gonzalez was convicted by a federal jury of possessing cocaine with the intent to distribute the drug in connection with a planned sale that took place on August 10, 2005. Gonzalez had driven to the sale in a car owned by one of his codefendants that contained approximately one kilogram of cocaine hidden in a secret compartment. His defense at trial, however, was that he was unaware of either the cocaine or the intended sale. In response, the government presented witnesses who testified regarding Gonzalez's involvement in the specific transaction charged as well as in a broader uncharged drug conspiracy that had previously involved only two-ounce (59.7 gram) sales of cocaine. The district court sentenced Gonzalez based on the two-ounce quantity because the court determined that that amount was all that he should have reasonably foreseen would be involved in the August 10 transaction.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

On appeal, Gonzalez challenges the district court's evidentiary rulings, the sufficiency of the evidence against him, the reasonableness of his sentence, and the effectiveness of his trial counsel. The government cross-appeals, challenging the district court's drug-quantity determination and sentence. For the reasons set forth below, we **AFFIRM** Gonzalez's conviction, but **REVERSE** his sentence and **REMAND** the case for resentencing consistent with this opinion.

## I. BACKGROUND

### A.     Factual background

In September of 2005, a federal grand jury indicted Gonzalez, Antonio Rodriguez, and Hector Sanchez. A single count charged that all three codefendants possessed cocaine with the intent to distribute the drug, and that they did, in fact, distribute 500 grams or more of cocaine on or about August 10, 2005, all in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(B), and 18 U.S.C. § 2. The charges stemmed from a single drug transaction that involved the three named codefendants as well as several other unindicted associates and a confidential government informant.

Rodriguez and Sanchez both pled guilty, with Rodriguez agreeing to testify against Gonzalez. The testimony of Rodriguez in fact constituted the bulk of the government's case at Gonzalez's trial. Two other witnesses also testified for the government—Emad Silmi, the confidential informant, and Damian Davis, one of the arresting officers—but neither had met Gonzalez prior to the August 10, 2005 transaction. Gonzalez chose not to testify on his own behalf, and the defense rested without calling any witnesses.

The government and Gonzalez agreed at trial about many of the facts relevant to the August 10, 2005 transaction. Both parties stipulated that the quantity of cocaine involved in the transaction was 995.6 grams. Counsel for Gonzalez conceded that Gonzalez drove the "drug car" to the transaction, and that the car contained a hidden compartment in which the cocaine was stored. Both parties further agreed that the "drug car" Gonzalez drove was not his own. Gonzalez's theory of the case was that he was simply unaware that the event to which he drove was going to be a drug transaction, or that the vehicle he drove contained any drugs.

To counter these assertions, the government introduced testimony, primarily from Rodriguez, regarding the nature of Gonzalez's participation in a broader, uncharged drug conspiracy that included the three named codefendants as well as other associates. The admissibility of much of Rodriguez's testimony regarding the out-of-court statements of coconspirators hinged on the government's ability to prove the existence of the uncharged conspiracy.

Rodriguez testified that he had begun selling drugs in 1992 to support his family and his own drug habit. From approximately April of 2005 until July of that year, Rodriguez's primary cocaine supplier in the Cleveland area had been a man known to Rodriguez as "Victor." Rodriguez purchased drugs from Victor in one- or two-ounce quantities on multiple occasions. In approximately May of 2005, Victor informed Rodriguez that Victor's nephew—Gonzalez—had moved to Cleveland from New Jersey. Victor allegedly told Rodriguez that Gonzalez had come to town in order to "make a few thousand dollars," and he asked Rodriguez to introduce Gonzalez to some of Rodriguez's own drug customers.

Rodriguez complied and, on at least two occasions, paid Gonzalez to drive him to specific locations where Rodriguez sold approximately two-ounce quantities of cocaine. He said that he did this, in part, because he felt that he owed Victor—Gonzalez's uncle—a favor. According to Rodriguez, he held the drugs intended for sale openly in his hands during these drives with Gonzalez so that he could quickly throw them out of the window if he and Gonzalez were ever pulled over by the police. Rodriguez essentially tutored Gonzalez in the drug trade on these occassions and introduced customers to him, informing them that they could buy drugs from Gonzalez if Rodriguez

himself became unavailable.  Gonzalez also allegedly drove Rodriguez on lawful errands, such as picking up parts for Rodriguez's car.

Victor became unable to supply further quantities of cocaine at some point in early July of 2005, causing Rodriguez to seek out other sources.  In the course this effort, Rodriguez met Emad Silmi who, unbeknownst to Rodriguez, was a confidential government informant.

On or about July 8, 2005, Silmi informed Rodriguez that he had run out of cocaine to sell.  Silmi then asked Rodriguez if he knew of anyone who could supply a kilogram of cocaine.  Rodriguez testified that, because he did not deal in such large quantities of drugs, he contacted his prior supplier, Victor, to see if Victor might be able to fulfill Silmi's request.  According to Rodriguez, Victor responded that he knew someone who might be able to help Rodriguez obtain the drugs.

A few days later, Victor got back to Rodriguez concerning the proposed kilogram deal.  Victor told Rodriguez that Hector Sanchez, one of Victor's suppliers, could provide the requested kilogram for sale.  Rodriguez testified that he knew Sanchez to be associated with Victor because Rodriguez had personally witnessed Sanchez selling drugs to Victor who, in turn, sold them to Rodriguez.  At the time of the proposed kilogram sale, Rodriguez owed Victor "a few thousand" dollars, and Rodriguez hoped that if he facilitated the proposed kilogram sale, Victor would forgive the debt.

Knowing that Rodriguez did not want to be involved in such a large transaction, Victor assured Rodriguez that the latter's role would be limited to introducing both Gonzalez and Sanchez to Silmi.  Victor also allegedly told Rodriguez that one problem with the proposed transaction was that Sanchez spoke little English, and Silmi spoke no Spanish.  Consequently, Victor allegedly explained to Rodriguez that Gonzalez would act as an translator for the deal because he could speak both languages.

On August 10, 2005, the day of the kilogram transaction, Victor arranged to have Gonzalez and Sanchez pick up Rodriguez at a particular gas station in Cleveland.  Sanchez arrived at the gas station in a Ford Contour and Gonzalez showed up shortly thereafter in his Honda Accord.  At that point, the group changed vehicles at Sanchez's behest, with Gonzalez driving the Contour and Rodriguez driving the Accord, accompanied by Sanchez.  The two drivers then proceeded independently to Moda, a Cleveland nightclub owned by Silmi.

Rodriguez and Sanchez reached Moda first and parked in a public lot across an alley from the back of the nightclub.  Gonzalez arrived five or six minutes later and parked in the same lot approximately 25 cars away.  Upon their arrival, Rodriguez and Sanchez exited their vehicle and met with Silmi in his Lexus automobile on the nightclub side of the alley.  Silmi had never met Sanchez before, and Rodriguez introduced Sanchez to Silmi under the false name of Carlos.  This was accomplished without the use of Gonzalez's translation abilities.

Rodriguez and Sanchez then exited the Lexus and proceeded to the Contour that Gonzalez had been waiting in since arriving at the scene.  At that point, Sanchez reached into the car and moved some cables that electronically opened a hidden compartment under the passenger's seat containing what turned out to be 995.6 grams of cocaine.  Sanchez retrieved the package of cocaine and handed it to Rodriguez, who stuffed it into his pants.  Gonzalez remained in the driver's seat of the Contour.  Rodriguez did not recall any conversation taking place between Sanchez and Gonzalez during the retrieval of the drugs, but Rodriguez explained that he was standing at the back of the car and was "high" on drugs at the time.

Concealing the package, Rodriguez and Sanchez returned to Silmi's Lexus, got back into the car, and showed Silmi the cocaine.  Rodriguez then advised Silmi "no touchy-touchy," which he

testified was meant to convey that Silmi could not touch the drugs until he produced the money. To this, Silmi responded "give me a second" and exited the vehicle. Rodriguez interpreted this to mean that Silmi would go back into the nightclub to get the money. Instead, after Silmi exited the vehicle, a police task force that had been monitoring the entire transaction swept in and arrested all of the participants.

## B.     Procedural background

Gonzalez was convicted by the jury on the only count in his indictment, which charged him with possessing cocaine with the intent to distribute more than 500 grams of the drug, with actually distributing the cocaine, and with aiding and abetting. The district court instructed the jury that the two charges of possession and distribution in Count One were to be interpreted in the alternative, even though the indictment was worded in the conjunctive.

In addition to the substantive charge, the district court also submitted to the jury, over the government's objection, a special verdict form that inquired whether Gonzalez "knew" that the amount of drugs involved in the August 10, 2005 transaction was either more than 500 grams or less than 500 grams. The jury determined that the amount of drugs known by Gonzalez to have been involved in the transaction was less than 500 grams.

At the sentencing hearing, the district court found that Gonzalez was responsible for only two ounces of cocaine because it determined that, based on the smaller drug deals in which Gonzalez had taken part, two ounces was the quantity that he should have reasonably foreseen would be involved in the August 10, 2005 transaction. This quantity determination yielded an offense level of 16, from which the court varied upward two levels, based primarily on considerations of deterrence. Gonzalez's adjusted offense level of 18, combined with his criminal history category of I, resulted in a Guidelines range of 27 to 33 months in prison. His term of imprisonment was ultimately set at 30 months.

Gonzalez timely filed the present appeal, arguing that (1) the district court erred by admitting certain out-of-court statements as nonhearsay under Rule 801(d)(2)(E) of the Federal Rules of Evidence, (2) the government failed to give proper notice that it planned to introduce "other act" evidence pursuant to Rule 404(b) of the Federal Rules of Evidence, (3) the district court's two-level increase to Gonzalez's base offense level under the Guidelines was unreasonable, (4) insufficient evidence supported his conviction, and (5) he received ineffective assistance of counsel at trial. The Government cross-appealed, asserting that the district court erred by failing to sentence Gonzalez to the statutory minimum term of five years' imprisonment based on the full quantity of cocaine actually involved in the August 10, 2005 transaction.

## II.  ANALYSIS

## A.     Coconspirator statements

Gonzalez first asserts that the district court improperly admitted certain out-of-court statements as nonhearsay pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. We generally review a district court's evidentiary decisions under the abuse-of-discretion standard. *United States v. Talley*, 164 F.3d 989, 998 (6th Cir. 1999). Whether the government has met its burden of showing a conspiracy under Rule 801, however, is a preliminary determination of fact that we will not set aside unless clearly erroneous. *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005).

Rule 801(d)(2)(E) provides that statements offered against a party "by a coconspirator of a party during the course and in furtherance of the conspiracy" are not hearsay. Before admitting the out-of-court statements of coconspirators pursuant to that rule, the district court must find by a

preponderance of the evidence that a conspiracy existed, that the defendant against whom the statements are offered belonged to the conspiracy, and that the statements in question were made in the course of and in furtherance of the conspiracy. *United States v. Carter*, 14 F.3d 1150, 1155 (6th Cir. 1994).

Gonzalez specifically argues that the district court erred in admitting two out-of-court statements made by Victor to Rodriguez:  Victor's assertion that Gonzalez would act as a translator for the kilogram transaction, and Victor's request that Rodriguez introduce Gonzalez to the drug trade.  He argues that these statements should not have been admitted under Rule 801(d)(2)(E) for two reasons.  First, Gonzalez asserts that insufficient evidence supported the government's claim of an uncharged conspiracy among Gonzalez, Rodriguez, Sanchez, and Victor.  Second, he claims that the district court failed to make the requisite factual findings regarding such a conspiracy.

The district court may consider the contents of the statements in question in evaluating the existence of a conspiracy for the purpose of Rule 801, but those statements "are not alone sufficient to establish . . . the existence of the conspiracy."  Fed. R. Evid. 801(d)(2).  Gonzalez argues, along these lines, that the only evidence of the conspiracy came in the form of Victor's out-of-court statements as related by Rodriguez, and that these statements alone are insufficient to establish a conspiracy for the purpose of Rule 801(d)(2)(E).

If the only evidence of the conspiracy had been Victor's out-of-court statements as testified to by Rodriguez, then Gonzalez would be correct in arguing that the statements were insufficient to establish a conspiracy.  The problem with Gonzalez's argument, however, is that the government presented additional, nonhearsay evidence of Victor's and Gonzalez's involvement in the conspiracy.  Indeed, much of Rodriguez's testimony concerning Victor was not hearsay at all, but rather first-hand accounts of meeting with Victor, buying cocaine from Victor, being introduced to Gonzalez through Victor, and going on drives with Gonzalez to sell the drugs obtained from Victor.  Similarly, Rodriguez offered first-hand accounts of meeting Sanchez in the course of purchasing drugs from Victor.  The argument that the uncharged conspiracy was supported solely by Rule 801(d)(2)(E) statements, therefore, is unfounded.

Gonzalez next asserts that the district court did not make sufficient findings to support the existence of a conspiracy.  In order to establish a drug conspiracy, the government must show "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy."  *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999).  In this case, the district court explained its decision to admit the evidence at issue as follows:

> The testimony about what a co-conspirator says offered by another co-conspirator, as long as the Court finds it was made during and in furtherance of the conspiracy, is admissible under the provision of Rule 801(d)(2)(E).

> The Court finds there is sufficient evidence to demonstrate the fact of a conspiracy and, further, finds that the testimony of Rodriguez regarding the statements of Victor come within the exception to the hearsay rule.

This court previously approved similar generalized findings in support of admitting evidence under Rule 801(d)(2)(E) in *United States v. Maliszewski*, 161 F.3d 992, 1007 (6th Cir. 1998) (upholding a district court's bare conclusion that "[t]he evidence overwhelmingly supports the maker of these various statements . . . as being a member of a conspiracy.  The statements in each respect were made during the course of and in furtherance of a conspiracy . . . .").

The central issue, therefore, is not the depth of the district court's analysis, but rather its correctness.  As noted above, sufficient nonhearsay testimony supported the existence of a drug conspiracy involving Gonzalez, Rodriguez, Sanchez, and Victor.  The statements in question were

unquestionably made within the scope of and in furtherance of a drug conspiracy in that they directly aided the conspirators' efforts to obtain and distribute drugs. We therefore find no factual or legal error in the district court's determination, and hold that its admission of the statements pursuant to Rule 801(d)(2)(E) was not an abuse of discretion.

## B.     Other-act evidence

Gonzalez further claims that the district court erred by admitting testimony concerning other acts allegedly committed by him because the government failed to give proper notice as required by Rule 404(b) of the Federal Rules of Evidence. In particular, Gonzalez objects to the admission of statements by Rodriguez concerning instances in which Gonzalez had driven him to prior drug deals not charged in Gonzalez's indictment. Under Rule 404(b), when the defendant requests notification of the government's intent to introduce other-act evidence, the government must provide such notice in a reasonable form and manner. *See, e.g.*, *United States v. Barnes*, 49 F.3d 1144, 1147 (6th Cir. 1995) (setting forth the Rule 404(b) notice requirements).

We ordinarily review the district court's decision to admit evidence pursuant to Rule 404(b) under the abuse-of-discretion standard. *United States v. Acosta-Cazares*, 878 F.2d 945, 948 (6th Cir. 1989), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995). But Gonzalez's counsel, Joseph Dubyak, couched his objections to the other-act evidence at issue in terms of relevancy rather than notice. Although Dubyak argued on the day of trial that "now I get told 'Oh, by the way, this is all of the other stuff that we're going to introduce,'" he raised no objection to Assistant U.S. Attorney Becker's assertion, and the district court's agreement, that he had failed to properly seek discovery of any other-act evidence. The following exchange took place prior to trial:

> Dubyak:      .... And I think, secondly, you know, under 404, if the government is trying to bring in some other—some other acts or some other information about, you know maybe my client had been somewhere with one of the other defendants and maybe there was some discussion about drugs or something, that I say that that's totally improper, that's irrelevant.

> The court:   .... Did you move for discovery of 404(b) testimony? I wasn't aware that you had.

> Becker:      I don't believe so, Your Honor.

> The court:   Yes.

> Becker:      I looked at the discovery requests, and I didn't see that in there.

Dubyak never contradicted the court or opposing counsel on this point.

Gonzalez's counsel thus not only failed to specifically object on Rule 404(b) notice grounds, but also left the district court with the impression that he had not even made a discovery request that would have triggered the government's notice obligation. In Gonzalez's appellate brief, in fact, he cites the above exchange as an example of Dubyak's ineffectiveness. Due to Dubyak's failure to raise a proper objection based on lack of notice, we will apply the plain-error standard of review to Gonzalez's evidentiary claim. *See United States v. Baker*, 458 F.3d 513, 519 (6th Cir. 2006) ("The 'plain error' rule also applies to a case . . . in which a party objects to the submission of evidence on specific grounds in the trial court, but on appeal the party asserts new grounds challenging the evidence."); *United States v. White*, 405 F.3d 208, 213 n.3 (4th Cir. 2005) (reviewing a Rule 404(b) notice claim under the plain-error standard where the defendant had objected to the testimony on other grounds, but not as to notice).

An appellant seeking to demonstrate plain error must establish: "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (brackets and quotation marks omitted). If these three conditions are met, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (brackets omitted).

Gonzalez points out that Dubyak did, in fact, submit a discovery request well before trial that sought, among other things, "[a]ll 'other offense' evidence which the Government intends to use in its case in chief or in rebuttal." This obviously contradicts the assertions made by the district court and the government prior to trial that no such request was made. Furthermore, the government concedes that it did not provide its full trial brief to Dubyak until the morning of the first day of trial.

The testimony at issue regarding Gonzalez's involvement in prior uncharged drug activity with Rodriguez was clearly admissible under Rule 404(b), but for the notice violation, to show Gonzalez's motive or knowledge. *See* Fed. R. Evid. 404(b) (providing that evidence of other acts not admissible to demonstrate propensity "may, however, be admissible for other purposes, such as proof of . . . motive . . . [or] knowledge"). Yet the remedy for an unexcused violation of Rule 404(b)'s notice requirement is exclusion of the evidence. Fed. R. Evid. 404(b) advisory committee's note, 1991 amendment ("Because the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides that the notice requirement has not been met."). The government responds by arguing that, even though the district court admitted the testimony at issue under Rule 404(b), the testimony should not have been subject to that rule at all because it was, in reality, simply background evidence supporting a broader, uncharged drug conspiracy that was "inextricably intertwined" with the offense charged against Gonzalez. *See United States v. Everett*, 270 F.3d 986, 992 (6th Cir. 2001) (determining that evidence of the defendant's receipt of certain checks was intrinsic to her alleged crime of bank fraud and therefore not subject to Rule 404(b)).

If the government is correct, then any error resulting from the Rule 404(b) notice issue would be harmless. *See id.* Had the testimony in question been presented *solely* to establish an uncharged conspiracy for purposes of Rule 801, however, it should not have been put before the jury at all. Whether evidence of an uncharged conspiracy—or any uncharged crime—is subject to Rule 404(b) depends upon the extent to which it is "intertwined with" the charged offense. *See Everett*, 270 F.3d at 992.

In *United States v. Barnes*, 49 F.3d 1144 (6th Cir. 1995), this court explained the distinction between acts that are intrinsic to the offense charged—and thus not subject to Rule 404—and extrinsic "other acts," which are subject to the rule. Like Gonzalez, Barnes was charged only with drug possession rather than conspiracy. *Barnes*, 49 F.3d at 1146. Barnes also argued on appeal, like Gonzalez, that the government had failed to properly provide notice of the other-act evidence that he contended was governed by Rule 404(b). The government in *Barnes* had introduced testimony at trial regarding a prior, uncharged drug shipment that was "short" of the expected quantity of drugs and for which the charged drug shipment was expected to make up. Holding that evidence of the prior shipment was "intrinsic" to the charged offense, the court explained that

> [w]hen the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed "extrinsic." "Intrinsic" acts, on the other hand, are those that are part of a single criminal episode. Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity. When that circumstance applies, the government has no duty to disclose the other crimes or wrongs evidence.

*Barnes*, 49 F.3d at 1149.

The Seventh Circuit case of *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002), adopted an even broader definition of intrinsic evidence, explaining that evidence might be intrinsic simply where it fills a "chronological or conceptual void in the story of the crime [charged]." This court has also employed language approving of such a broad definition, stating that intrinsic evidence not subject to Rule 404(b) "[t]ypically . . . is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or *completes the story* of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (emphasis added) (rejecting the government's argument that evidence of drug transactions that occurred six years before the charged conspiracy, and that did not involve an identity of parties, was intrinsic). That narrative-based definition, however, has been criticized as overly broad. *See United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000) (commenting that "[t]he 'complete the story' definition of 'inextricably intertwined' threatens to override Rule 404(b)").

In this case, all of the other acts alluded to took place during the months leading up to the August 10, 2005 drug transaction, and they occurred under the similar circumstances of Gonzalez driving a car to facilitate Rodriguez's drug dealing. Moreover, analogous to *Barnes*, Gonzalez's prior rides with Rodriguez can be seen as a continuing pattern of criminal activity and even a necessary predicate for the charged offense. Only through these earlier drives, after all, did Gonzalez become acquainted with the basics of the drug trade and with one of the same conspirators who was involved in the August 10 drug deal. As the government asserts, "[i]t would be unthinkable that Rodriguez would choose to arrive for a $22,000 drug deal involving a kilogram of cocaine associated with persons he had never met or dealt with before."

*Barnes*, on the other hand, might arguably be distinguished from the present case because in *Barnes* "there was a direct connection between the earlier 'short' drug shipment and the receipt of the one for which defendants were charged." 49 F.3d at 1149. But here too there was a connection—albeit perhaps not quite as "direct"—between Rodriguez's tutoring of Gonzalez in the drug trade as Gonzalez drove him to the earlier transactions and Gonzalez's role as the driver of the "drug car" in the offense charged against Gonzalez and Rodriguez. Though the issue here is a close one, we find that the circumstances before us are closer to *Barnes* than to *Hardy*. Without relying on a broad, narrative-based definition, we conclude that the evidence of an ongoing drug conspiracy between Gonzalez and Rodriguez—which led up to and encompassed their jointly charged substantive offense—establishes a continuing pattern of illegal activity that is intrinsic to the charged offense and thus not subject to Rule 404(b). *See Barnes*, 49 F.3d at 1149.

Moreover, even if we were to consider the evidence in question extrinsic to the charged offense and thus subject to the Rule 404(b) requirements, any error arising from its admission did not affect Gonzalez's substantial rights or seriously affect the fairness, integrity, or public reputation of the judicial proceeding. Gonzalez does not clearly articulate how his substantial rights were prejudiced by the lack of advance notice from the government. Despite the fact that Gonzalez did not receive full Rule 404(b) notice in the form of the government's trial brief until the day of the trial, Dubyak noted at argument before the district court prior to trial that he had considered filing a motion in limine because "I look[ed] at the plea bargains and I look[ed] at proffers and I s[aw] all of this hearsay upon hearsay about what other people have said and people who aren't even in this case." Even if these proffers and plea bargains did not embody explicit notice as contemplated by Rule 404(b), Dubyak's statement demonstrates that he had sufficient notice of the other-act evidence at issue such that its admittance at trial did not seriously affect the fairness, integrity, or public reputation of the proceedings.

**C.     Sufficiency of the evidence**

Gonzalez's next claim challenges the sufficiency of the evidence supporting his conviction. In evaluating a sufficiency-of-the-evidence challenge, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). This court has previously explained that "attacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (brackets omitted).

As noted earlier, certain facts in this case are undisputed. Counsel for Gonzalez concedes that Gonzalez drove the "drug car" to the site of the transaction where the kilogram purchase was to take place. The car, however, was not Gonzalez's, and the drugs were hidden from view in a secret compartment. Thus, if this had been the only evidence that the government had presented, an inference of Gonzalez's criminal intent regarding the drug deal would have been relatively weak.

The government went further, however, and presented testimony to the effect that Gonzalez had knowingly driven Rodriguez to prior drug transactions, that Gonzalez was to have a specific role as a translator in the charged transaction, and that Gonzalez's uncle Victor had instructed Rodriguez to teach Gonzalez the drug trade and to introduce him to customers. This evidence was more than sufficient for at least one rational juror to conclude beyond a reasonable doubt that Gonzalez arrived at the August 10, 2005 transaction with the drugs intending to act either as a principal or as an aider and abetter of the drug sale.

**D.     Gonzalez's sentence**

Turning now to Gonzalez's sentence, the parties raise arguments that pull in opposite directions. Gonzalez argues that the district court erred in varying upward two offense levels based on the 18 U.S.C. § 3553(a) factors to arrive at the 30-month sentence that he received. The government not only disputes this, but argues in its cross-appeal that the district court erred in not sentencing Gonzalez to at least the mandatory 60-month minimum sentence that is required for someone responsible for more than 500 grams of cocaine.

We review the district court's application of the Sentencing Guidelines and applicable statutes de novo, *United States v. Cousins*, 469 F.3d 572, 575 (6th Cir. 2006), but review the ultimate sentence for reasonableness. *United States v. Rita*, 127 S. Ct. 2456, 2465 (2007). Because a determination in favor of the government on its cross-appeal would moot Gonzalez's sentencing argument, we will address the government's argument first.

The central issue here requires reconciling the parties' stipulation of the drug quantity with the jury's verdict and the district court's findings. Prior to trial, the parties stipulated that the quantity of cocaine actually involved in the August 10, 2005 transaction was 995.6 grams. Gonzalez's indictment specified that he had possessed or distributed (or had aided and abetted the possession or distribution of) more than 500 grams of cocaine. In addition to requiring a verdict on this charge, however, the district court presented the jury with a special verdict form that it was to complete if it found Gonzalez guilty. That verdict form stated:

> We, the jury . . . find that the amount of cocaine that the defendant Jomill Gonzalez knew was involved in the transaction on or about August 10, 2005 was: (Check only one of the following)
>
> _____ more than 500 grams of cocaine

_____ less than 500 grams of cocaine

The jury found Gonzalez guilty on the substantive count, but found that the amount of cocaine he "knew" to be involved in the August 10, 2005 transaction was less than 500 grams.

The only way to reconcile these seemingly contradictory findings is to say that the jury determined that Gonzalez knowingly participated in the possession or distribution of what was in fact almost a kilogram of cocaine, but that he did not actually know that the quantity involved was anywhere near that large. *See United States v. Arnold*, 416 F.3d 349, 357-58 (5th Cir. 2005) (determining that potentially contradictory verdicts reached in a drug-conspiracy case were not ambiguous because the jury rendered its initial guilty verdict as to the substantive count without reference to quantity, and then considered the quantity in its response to the second interrogatory).

At sentencing, the district court noted the parties' stipulation as to the quantity of cocaine involved in the transaction, adding "[i]t's as plain as the nose on your face or my face that it's a kilo." Nevertheless, the district court applied a "reasonable foreesability" test to determine the amount of cocaine to attribute to Gonzalez. Based on the testimony that Gonzalez's prior drug transactions with Rodriguez involved only two-ounce quantities, the court concluded that the amount of cocaine reasonably foreseeable by Gonzalez to be involved in the August 10, 2005 transaction would also have been two ounces. The court then calculated Gonzalez's Sentencing Guidelines range based on that two-ounce quantity.

According to the government, the district court erred in applying the reasonable-foreseeability standard. The text and commentary of § 1B1.3 of the Guidelines, combined with the substantive charge in this case, supports the government's argument. Section 1B1.3(a)(1)(A) specifies that a defendant is responsible for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or wilfully caused by the defendant." The Guidelines do not qualify this statement with a reasonable-forseeability standard. In contrast, § 1B1.3(a)(1)(B) provides, in pertinent part, that, "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," a defendant is also responsible for "all *reasonably foreseeable* acts and omissions *of others* in furtherance of the jointly undertaken criminal activity." (Emphasis added.)

Application Note 2 to U.S.S.G. § 1B1.3 clarifies that "[t]he requirement of reasonable foreseeability applies only in respect to the conduct . . . of others . . . . It does not apply to conduct that the defendant personally undertakes, aides, [or] abets . . . ." For example, "a defendant who transports a suitcase knowing that it contains a controlled substance . . . is accountable for the controlled substance in the suitcase regardless of his knowledge or lack of knowledge of the actual type or amount of that controlled substance." U.S.S.G. § 1B1.3 cmt. n.2(a)(1). This example mirrors the factual scenario from a Second Circuit case, *United States v. Imariagbe*, 999 F.2d 706, 707 (2d Cir. 1993), where the defendant was held accountable for the full amount of the drugs found in a suitcase that he mistakenly believed held less, and is directly analogous to the scenario presented in the case before us.

Gonzalez was neither charged with nor convicted of conspiring to distribute cocaine. Instead, he was held responsible for his own acts as either a principal or as an aider and abetter of the August 10, 2005 drug transaction. Gonzalez's sentence for that particular offense conduct must therefore be calculated under U.S.S.G. § 1B1.3(a)(1)(A). Whether he "knew" the actual quantity of drugs involved (as the jury determined that he did not) or even whether he could have "reasonably foreseen" the actual quantity (as the district court determined that he did not) is simply irrelevant under both U.S.S.G. § 1B1.3 and the penalty provisions of 21 U.S.C. § 841. *See United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003) (holding that "[i]ntent [regarding drug type and quantity]

is . . . irrelevant to the penalty provisions of § 841(b), which require only that the specified drug types and quantities be "involv[ed]" in an offense").

Gonzalez responds by arguing that, because the government established that a conspiracy existed for purposes of Rule 801 as addressed in Part II.A. above, the district court was entitled to employ the "reasonable foreseeability" standard at sentencing. He asserts that the government "cannot have it both ways" by establishing that Gonzalez was a conspirator for the purpose of Rule 801, but then holding him accountable as a principal or as an aider and abetter for the purpose of sentencing. Gonzalez appears to read U.S.S.G. § 1B1.3 as providing that if a criminal act is part of a conspiracy—charged or uncharged—then the district court may apply the more lenient "reasonable foreseeability" standard at sentencing.

Gonzalez's argument is problematic for several reasons. First, Gonzalez cites no authority to support it. The second problem is that the distinction between § 1B1.3(a)(1)(A) (which does not include the reasonably foreseeable standard) and U.S.S.G. § 1B1.3(a)(1)(B) (which does) focuses not on whether the criminal act in question took place in the context of a conspiracy, but rather on whether the criminal act was committed "by the defendant" as opposed to by "others." The rationale behind this distinction between the two subsections is made all the more apparent by the fact that they are worded in the conjunctive—that is, a defendant is responsible *both* for his own criminal acts under §1B1.3(a)(1)(A) *and* for the reasonably foreseeable criminal acts of others with whom he conspires in relation to the charged offense under § 1B1.3(a)(1)(B). In effect, therefore, the government *can* "have it both ways." Finally, Gonzalez provides no logical explanation for why the fact that a defendant's own criminal act happens to be part of a larger conspiracy should result in a smaller sentence rather than a greater one.

The district court acknowledged, based on the parties' stipulation, that the actual quantity of cocaine involved in the August 10, 2005 transaction was 995.6 grams. It went on, however, to erroneously take into account both the jury's finding as to what quantity of drugs Gonzalez "knew" to have been involved in the transaction, and its own finding regarding what quantity should have been "reasonably foreseeable" to him. The court instead should have calculated Gonzalez's sentence under the relevant statutory and Guidelines provisions as an offense involving 995.6 grams of cocaine.

As the government points out, that quantity carries a mandatory-minimum sentence of five years' imprisonment pursuant to 21 U.S.C. § 841(b)(1)(B). The application of this mandatory minimum creates no *Apprendi* problem, moreover, because five years does not exceed the statutory maximum of twenty years' imprisonment that can be imposed for an unspecified quantity of cocaine under 21 U.S.C. § 841(b)(1)(C). *See United States v. Wade*, 318 F.3d 698, 705 (6th Cir. 2003) (holding that *Harris v. United States*, 536 U.S. 545, 560-63 (2002), confined the constitutional requirements of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to factors that increase a defendant's sentence beyond the otherwise-applicable statutory maximum).

Because we agree with the government that the district court erred in determining Gonzalez's sentence, we have no need to address Gonzalez's claim regarding the district court's upward variance under the Guidelines. His resentencing on remand will instead be governed by the principles set forth in this opinion.

**E.     Ineffective assistance of counsel**

Gonzalez's final argument is based on his contention that he received the ineffective assistance of counsel at trial.  Certain elements of this case indicate that such a claim is at least plausible.  Nearly all of the testimony against Gonzalez came from Rodriguez—a quadruply convicted felon who was admittedly "high" on various drugs during nearly all of the events to which he testified.  Despite this, defense counsel Dubyak presented no case-in-chief.  Gonzalez, moreover, also suggests that Dubyak might have misinterpreted the sole count contained in Gonzalez's indictment as requiring the government to prove both possession and distribution rather than either one singly.  Finally, the district court noted that Dubyak failed to file a sentencing memorandum despite the court's specific invitation to do so.  At one point during sentencing, Dubyak even stated to the court "I apologize for my lack of intellect."

We generally decline, however, to address claims of ineffective assistance of counsel on direct review.  *United States v. Barrow*, 118 F.3d 482, 494 (6th Cir. 1997) ("The more preferable route for raising an ineffective assistance of counsel claim is in a post-conviction proceeding under 28 U.S.C. § 2255, whereby the parties can develop an adequate record." (quotation marks omitted)).  Because Gonzalez's ineffective-assistance-of-counsel claim requires a fact-specific examination of Dubyak's alleged performance deficiencies, and because a full understanding of those issues is not readily discernable from the present record, we find no reason to depart from our established practice of deferring consideration of such claims to a proceeding properly filed under 28 U.S.C. § 2255. *See United States v. Valdez*, 362 F.3d 903, 913-14 (6th Cir. 2004) (declining to address an ineffective-assistance claim on direct review where the issues surrounding it were not fully addressed in the record on appeal).

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Gonzalez's conviction, but **REVERSE** his sentence and **REMAND** the case for resentencing consistent with this opinion.