**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0580n.06

**No. 08-3169**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 19, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| WILLIAM J. PIKE, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SILER, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

As part of an undercover operation, Ohio police officer Michael Gabrielson negotiated the purchase of a firearm from defendant William J. Pike, Jr. and Paul D. Pennington. The transaction was arranged over the telephone and when Gabrielson arrived at Pike's residence to complete the transaction, Pennington produced the firearm and accepted the negotiated price. As a result, Pike was charged with and later convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).

On appeal, Pike argues that the admission into evidence of Gabrielson's recorded conversations with Pennington was inadmissible hearsay that violated Pike's Sixth Amendment Confrontation Clause rights; the evidence of a conspiracy between Pennington and Pike

constructively amended the indictment; and there was insufficient evidence to support his conviction. Because each of these arguments lacks merit, we affirm.

I.

Officer Gabrielson first met Pike and Pennington in December 2006, while working as an undercover agent with the Ohio Organized Crime Investigations Commission. Pike and Pennington were friends. Gabrielson next saw them together and talked with both in February 2007 at Pike's home in Trotwood, Ohio. During this time period, Gabrielson engaged in over fifty telephone conversations with Pennington regarding topics such as dog fighting, stolen property, and firearms. Gabrielson also spoke on the phone with Pike an estimated three times. After the February 2007 meeting, the task force initiated surveillance of Pike's residence.

On the afternoon of March 5, 2007, Gabrielson called Pennington "[t]o discuss a possible purchase of stolen merchandise and/or firearms." Pennington informed Gabrielson that Pike possessed "one or two" firearms that he could sell. Pennington promised that he would speak to Pike about the possible sale and call Gabrielson later.

About 11:00 p.m. the same day, Pennington called Gabrielson to state that Pike was willing to sell Gabrielson a Kimel, nickel-plated .22 caliber revolver. Pennington mentioned that Pike recently sold his other firearm, a .357 caliber pistol. Gabrielson could hear Pike in the background and asked to speak directly with him. Pike confirmed that he would sell the firearm and offered it to Gabrielson for $200. Gabrielson negotiated with Pike and ultimately agreed to purchase the firearm for $175. Pike then gave the phone back to Pennington, who instructed Gabrielson to come

to Pike's residence at midnight to complete the transaction. Gabrielson recorded this telephone conversation.

Gabrielson arrived at Pike's residence at the appointed time, and Pennington directed him to the driveway of an abandoned house across the street. Pennington entered Gabrielson's vehicle and gave him the firearm. In the ensuing conversation recorded by Gabrielson, they discussed the purchase. Gabrielson paid Pennington the agreed amount of $175, as well as additional money to satisfy an earlier debt, and cautioned: "We said $175 for that and would you give that to him. Don't be losing any of it between here and there now." Pennington assured Gabrielson that Pike would receive the money right away: "Now, he ain't going to lose it believe me. He's waiting on me." Pennington then returned to Pike's house, and Gabrielson left the area.

Pike was subsequently indicted on one count of being a felon in possession of a firearm. Before trial, he filed a motion in limine to exclude the recorded statements made by Pennington, but the district court denied the motion and admitted the recordings into evidence. Following a non-jury trial, Pike was convicted as charged. He now timely appeals.

## II.

Pike reiterates his arguments, originally made in his motion in limine, that the admission of Pennington's out-of-court recorded statements violated his Sixth and Fourteenth Amendment rights to confront adverse witnesses, and that the statements constituted inadmissible hearsay. The district court denied his motion on the ground that Pennington's statements were non-testimonial and thus did not implicate the Confrontation Clause. The court also held that the recordings were admissible

as relevant statements made in furtherance of a conspiracy. We typically review a district court's evidentiary decisions for abuse of discretion. *United States v. Mayberry*, 540 F.3d 506, 515 (6th Cir. 2008); *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005). However, a claim that the admission of evidence violates the Confrontation Clause is reviewed de novo. *Mayberry*, 540 F.3d at 515.

We initially conclude that the district court properly admitted Pennington's recorded statements into evidence pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence, which provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. In order for a statement to be admitted under Rule 801(d)(2)(E), the offering party must prove by a preponderance of the evidence that the conspiracy existed, that the defendant was a member of the conspiracy, and that the coconspirator's statements were made in furtherance of the conspiracy. *United States v. Young*, 553 F.3d 1035, 1045 (6th Cir. 2009). The statements must be corroborated by independent evidence. Coconspirator statements may be admissible under Rule 801(d)(2)(E) even when no conspiracy has been charged. *Martinez*, 430 F.3d at 327 n.4 (citing *United States v. Blankenship*, 954 F.2d 1224, 1231 (6th Cir. 1992)); *United States v. Franklin*, 415 F.3d 537, 552 n.6 (6th Cir. 2005) (citing FED. R. EVID. 801, Advisory Committee Notes, 1974 Enactment, Note to Subdivision 801(d)(2)(E)).

Moreover, "the rule does not require that both parties be coconspirators; it merely requires the statement to be 'offered against a party' and be made by 'a coconspirator of a party during the course and in furtherance of the conspiracy.'" *United States v. Culberson*, Nos. 07-2390, 07-2425,

2009 WL 776106, at *4 (6th Cir. Mar. 24, 2009) (unpublished). Thus, "[c]ourts have consistently allowed the admission of testimony against a defendant made by the defendant's coconspirator to a government agent." *Id*. at *4 (citing *United States v. Mooneyham*, 473 F.3d 280, 286 (6th Cir. 2007) and *Bourjaily v. United States*, 483 U.S. 171, 180 (1987)).

In *Mooneyham*, we affirmed the admission of a coconspirator's tape-recorded statement made to an undercover agent, holding that under Rule 801(d)(2)(E) the declarant "was indisputably Mooneyham's coconspirator, and the statement in question was clearly made in furtherance of the conspiracy because it was directed at a potentially recurring customer (Agent Williams) with the intention of reassuring him of Mooneyham's reliability as a [drug] supplier." *Mooneyham*, 473 F.3d at 286. Likewise, in the present analogous circumstances, there is no question that Pennington was Pike's coconspirator in their arrangement to sell the firearm to Gabrielson and that Pennington was acting in furtherance of the conspiracy when he made the statements at issue.

Pike's tangential argument that the district court should not have considered the substance of Pennington's statements in resolving the preliminary question of admissibility of the statements under Rule 801(d)(2)(E) has already been rejected by this court. In *United States v. Gonzalez*, 501 F.3d 630 (6th Cir. 2007), we noted that "[t]he district court may consider the contents of the statements in question in evaluating the existence of a conspiracy for the purpose of Rule 801, but those statements 'are not alone sufficient to establish . . . the existence of a conspiracy.'" 501 F.3d at 636 (quoting Rule 801(d)(2)). Here, the district court properly considered the contents of Pennington's statements, as well as Gabrielson's eyewitness testimony regarding Pike and

Pennington, the gun itself, and Pike's admissions, in determining that the government had proven the preliminary questions by a preponderance of the evidence. Given the abundant evidence of a conspiracy and Pike's involvement in it, the district court did not err in admitting Pennington's recorded conversations under Rule 801(d)(2)(E).

Next, Pike asserts the alleged violation of his Sixth Amendment right to confront Pennington regarding the recorded statements. Generally, the Confrontation Clause prevents the introduction of "testimonial" evidence unless the witness was unavailable or the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). It is undisputed that Pennington was unavailable because he was under indictment for the same offense, and the Fifth Amendment right against self-incrimination prevented Pike from cross-examining him. Thus, the matter of constitutional admissibility turns on whether Pennington's statements are "testimonial" in nature.

While the Supreme Court has not yet given a precise definition of the term "testimonial," it has provided some guidance. For example, the Court has held that ex parte communications, affidavits, prior testimony, and custodial examinations constitute testimonial statements. *Crawford*, 541 U.S. at 51-52. In each of these categories, the statements were made under circumstances leading an objective witness reasonably to expect that the statements would be available for use against the accused in the future investigation and prosecution of a crime. *Id*. On the other hand, statements made in furtherance of a conspiracy are inherently nontestimonial in nature. *Crawford*, 541 U.S. at 56; *see also Martinez*, 430 F.3d at 329 ("[A] reasonable person in the position of a

coconspirator making a statement in the course of and furtherance of a conspiracy would not anticipate his statements being used against the accused in investigating and prosecuting the crime."); *United States v. Holmes*, 406 F.3d 337, 348 (5th Cir. 2005) ("Statements made by a co-conspirator during the course and in furtherance of a conspiracy are by their nature generally nontestimonial and thus are routinely admitted against an accused despite the absence of an opportunity for cross-examination.").

Pennington's recorded statements fall within this latter category of nontestimonial evidence. As the government argues, the purpose of the conversations was to further a criminal enterprise through which Pennington and Pike unlawfully sold firearms to Gabrielson. Pennington's statements were not made in reasonable anticipation of a future prosecution; rather, Pennington made the statements while assisting Pike, a convicted felon, in consummating the unlawful sale of a firearm. *See Culberson*, 2009 WL 776106 at *4 (holding that recorded conversations of a coconspirator were nontestimonial and properly admitted as evidence because they "were not made with the expectation that they would be used in court; they were made with the expectation that [another coconspirator] would continue to assist him with the conspiracy.").

Pike's protestation that "the statements are testimonial in that they were elicited by an undercover governmental agent, who acted with the primary purpose to establish facts relevant to criminal prosecution" is without merit. As we explained in *Mooneyham*, "[b]ecause [the declarant] was not aware that Williams was a police officer, his remarks were not the product of interrogation and were not testimonial in nature. Hence, there was no *Crawford* error in the introduction of those

remarks." *Mooneyham*, 473 F.3d at 287. This rationale applies equally to the present circumstances and reinforces the correctness of the district court's decision to admit the statements at issue. The admission of Pennington's recorded statements therefore did not violate Pike's rights under the Confrontation Clause.

III.

Pike next argues that because he was not charged with conspiracy, the government effectively altered the indictment by presenting evidence that a conspiracy existed. We have held that an indictment can be altered by an actual amendment, a constructive amendment, or a variance. *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007), *cert. denied*, — U.S. —, 129 S. Ct. 48 (2008). Pike argues that his indictment was subject to a constructive amendment or, alternatively, a variance.[1] We review de novo the issue of whether an amendment or a variance has occurred. *United States v. Prince*, 214 F.3d 740, 756 (6th Cir. 2000).

"A constructive amendment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of an offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *Prince*, 214 F.3d at 757 (citations and internal quotation marks omitted). Such an amendment is considered *per se* prejudicial and is tantamount to reversible error. *Id*. Although the distinction is subtle, a variance occurs when the terms of the

---

[1]An actual amendment refers to a physical alteration of the indictment's text, *United States v. Prince*, 214 F.3d 740, 756-57 (6th Cir. 2000), and does not apply here.

indictment remain unchanged but the evidence presented establishes materially different facts than those alleged in the indictment. *Id*. at 756-57. Unlike a constructive amendment, a variance does not require reversal unless it affects a "substantial right," *i.e.*, the defendant demonstrates prejudice to his ability to defend himself at trial or to the general fairness of the trial. *Id.* at 757.

Pike objects to the government's alleged attempt to show that he possessed the firearm solely through his association with Pennington. He maintains that the government's case against him was based upon an uncharged conspiracy, arguing that there was

> no evidence that [he] had either actual or constructive possession of [the] weapon but rather the government attempts to show such possession by [his] friendship with Mr. Pennington to whom actual possession can be shown. However, Mr. Pennington is not a co-defendant and his case has no bearing on Mr. Pike's case. Therefore, to allege a conspiracy with a defendant in an entirely unrelated case cannot have been reasonably expected or anticipated by the defense and to present evidence of such at trial clearly and improperly amends the indictment.

We disagree.

The trial record provides no support for Pike's contention that there was either a constructive amendment or a variance from the indictment, which charged him with being a felon in possession of a firearm. The only contested element of the offense was Pike's possession of the gun, and the proofs presented during the bench trial established this point and did not diverge from the allegations in the indictment. The government never argued that the mere fact of Pike's association with Pennington established possession. To the contrary, as the evidence presented by the government showed, Pike spoke directly with Gabrielson and offered to sell him a specific firearm. They negotiated a price and consummated the transaction, with Pennington acting as an intermediary, a

short time later across the street from Pike's house. The record reflects no misapprehension on the part of the court or the parties as to the nature of the charge against Pike or the requisite elements of the offense. In its findings issued at the conclusion of the trial, the district court specifically found that Pike "did, on the 5th day of March, 2007 knowingly possess a firearm" – in other words, the crime for which he was indicted, not for conspiracy. Thus, there is no basis for Pike's claim.

IV.

In a related argument, Pike maintains that there was insufficient evidence of his possession of the gun to support his conviction. "When a defendant challenges his or her conviction after a bench trial on the basis of insufficiency of the evidence, we must determine whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caseer*, 399 F.3d 828, 840 (6th Cir. 2005).

The crime of being a felon in possession of a firearm under 18 U.S.C. § 922(g) consists of three elements: "(1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm traveled in or affected interstate commerce." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). As we have already noted, the only element in dispute in this case is possession.

A conviction may be based on actual or constructive possession of a firearm. *Id*. "Actual possession requires that a defendant have immediate possession or control of the firearm, whereas constructive possession exists when the defendant does not have possession but instead knowingly

has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *Id*. (citations and internal quotation marks omitted). Possession may be established by either direct or circumstantial evidence. *Id*. Because mere presence alone near a gun is inadequate to prove constructive possession, other supplemental incriminating evidence must be presented. *Id*. "Consequently, evidence of some other factor – including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise – coupled with proximity may suffice." *Id*. (citations and internal quotation marks omitted).

Pike contends that his mere association with Pennington is insufficient to show that he exercised dominion and control over the firearm and hence constructively possessed it. He cites the lack of fingerprint evidence connecting him to the gun and the dearth of testimony showing that he was home on the night Gabrielson met Pennington or that he even knew Pennington was in possession of the firearm. Pike further suggests that "negotiation about the sale of an item cannot reasonably be enough evidence to show possession or control over the item." However, viewing all of the evidence in the light most favorable to the prosecution, we must disagree.

Pike spoke directly with Gabrielson on the telephone, offered to sell him a Kimel .22 caliber pistol, and negotiated a sale price of $175. An hour later, as arranged, Gabrielson traveled to Pike's house to complete the transaction, and the sale was consummated with Pennington across the street from Pike's house. Pennington produced the Kimel .22 caliber pistol, accepted $175 as the sale price, and assured Gabrielson that Pike would receive the money. The totality of these circumstances

- 11 -

support the district court's finding that Pike knowingly possessed the firearm described in the indictment. Through his previous encounters with Pike, Gabrielson was familiar with his voice and the location of his house; Pike and Pennington were known associates; Pennington indicated that Pike had a gun he would sell to Gabrielson; there was a close temporal proximity between Pike's negotiation and the sale; and, finally, the sale happened in a manner consistent with Pike's telephone negotiations, with Pennington indicating that Pike would receive the sale proceeds. All of these factors amply demonstrate that Pike was actively involved in the unlawful enterprise to sell the weapon to Gabrielson. We therefore conclude that based upon the evidence and making all inferences in support of the prosecution, a rational fact finder could conclude beyond a reasonable doubt that Pike possessed the firearm under a theory of constructive possession.

V.

For these reasons, we affirm the judgment of the district court.