NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0928n.06

Nos. 11-5550, 11-5609, 11-5664

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 21, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RODNEY EDWARD MOORE,
JAMES LAMONT DUNBAR, and
DWAYNE MICHAEL JOSEPH JR.,

    Defendants-Appellants.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
KENTUCKY

_____/

**Before:**      **GUY, and CLAY, Circuit Court Judges; HOOD, District Court Judge.**[*]

    **DENISE PAGE HOOD, District Court Judge.** Defendants James Dunbar, Rodney Moore, and Dwayne Joseph, Jr. were charged in a five-count, twenty-one defendant indictment for conspiracy to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. All three Defendants proceeded to trial. Defendants now make several evidentiary and constitutional challenges to the district court's sentence and also argue that the Fair Sentencing Act should apply to their pre-Act offenses. For the reasons stated below, the district court is **AFFIRMED** in part and the cases are **REMANDED** back to the district court for sentencing pursuant to *Dorsey v. United States*, Nos. 11-583 and 11-5721, 2012 U.S. LEXIS 4664 (June 21, 2012).

_____

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

In June 2007, based on information received from a confidential informant, the Drug Enforcement Agency (DEA) began investigating a drug trafficking conspiracy in Christian County, Kentucky. In July 2009, the grand jury returned a five-count indictment against 21 individuals, including Defendants Dunbar, Moore, and Joseph. Dunbar, Moore, and Joseph were all charged with conspiracy to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 and a forfeiture count. The indictment alleged that the conspiracy took place from June 2007 until June 2009. Moore was also charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Trial began on January 11, 2011. The jury returned guilty verdicts for Dunbar, Moore, and Joseph on January 18, 2011 for conspiracy to distribute 50 or more grams of cocaine base.

### A. James Dunbar

In June 2010, the government filed a Rule 404(b) notice of its intent to use evidence of Dunbar selling crack cocaine on September 11 and 12, 2008. The government noted that it was not required to file a Rule 404(b) notice because the instances "happened during the period of the conspiracy and [were] relevant to and directly probative of conspiratorial intent." The government admitted evidence of a third transaction, which took place on October 15, 2008, but it did not file a 404(b) notice. The government also filed its intent to seek life imprisonment given Dunbar's two prior felony drug convictions.

Dunbar requested that the district court exclude evidence of his prior convictions and criminal activities.[1] The district court found that evidence of Dunbar selling crack cocaine in September 2008 was probative of intent and direct evidence of Dunbar's participation in the conspiracy. At trial, co-conspirator Demetrius Williams identified Dunbar's voice on telephone conversations. He testified that Dunbar purchased crack cocaine from Williams during the period of 2007 until 2008.

Dunbar was sentenced on April 28, 2011. Dunbar argued that the Fair Sentencing Act should be applied retroactively and the imposition of a mandatory life sentence was cruel and unusual punishment in violation of the Eighth Amendment. The district court rejected Dunbar's arguments finding that the holding in *United States v. Carradine*, 621 F.3d 575 (6th Cir. 2010), precluded the district court from applying the Fair Sentencing Act retroactively. The district court also rejected Dunbar's cruel and unusual argument.

## B.    Rodney Moore

At trial, Williams testified that Moore "cooked" crack cocaine for him, which is the process used to turn powder cocaine into crack cocaine. On cross-examination by co-defendant Dunbar, DEA Agent Daren Atkins testified that the confidential informant identified Moore as a "crack cook." The government did not call the confidential informant to testify. A task force officer also testified that, when arrested, Moore admitted that he was involved with the distribution of a small amount of crack cocaine and had the ability to cook powder cocaine into crack cocaine. A search

---

[1]The district court granted the motion in part by excluding Dunbar's past convictions for trafficking cocaine because sufficient notice was not provided.

of Moore's residence revealed a baggie of cocaine, which Moore admitted was his. There was also other testimony that Moore had cooked crack cocaine on different occasions.

Moore moved for a new trial on the basis of the hearsay statements solicited from Agent Atkins. Specifically, Moore argued that his Sixth Amendment right to confrontation had been violated when the government failed to call the confidential informant as a witness. The district court denied the motion finding that the statement was not introduced for the truth of the matter asserted but rather to bolster the confidential informant's credibility. The district court also noted that if there was an error it was harmless given the evidence against Moore.

Moore was sentenced on April 27, 2011. Moore argued that the Fair Sentencing Act should apply retroactively. After finding that the Fair Sentencing Act was not retroactive, the district court sentenced Moore to a term of life imprisonment.

## C.      Dwayne Joseph

At trial, Williams identified Joseph's voice on a series of recorded telephone conversations and indicated that the two were discussing a drug deal. The evidence showed that Joseph purchased crack cocaine from Williams on several occasions between 2007 and 2008. During the testimony of co-defendant Alvin Quarles, the government asked whether Quarles remembered telling the government that he had observed Joseph cook crack cocaine. Joseph objected to the questioning as being beyond the scope of direct and cross examination. The district court allowed it, noting that the court had allowed all counsel to go beyond the scope of examination. The government then called Agent Atkins to testify to the statement Quarles made. The government argued that the

statement was a prior inconsistent statement that was only offered to impeach Quarles' testimony. The district court allowed it over objection.

## II. ANALYSIS

### A. Fair Sentencing Act

Dunbar, Joseph, and Moore all argue that the Fair Sentencing Act, which took effect on August 3, 2010, should be applied retroactively because they were sentenced after the Act was passed. The Supreme Court in *Dorsey v. United States*, in considering whether the Fair Sentencing Act should apply retroactively, determined that there were six reasons that weighed in favor of applying the Act retroactively. 2012 U.S. LEXIS 4664 (2012). First, the savings statute allows Congress to apply the Act to pre-Act offenders without the Act expressly stating so. *Id.* at *24. Second, the Sentencing Reform Act requires that defendants are sentenced based on the Guidelines in effect when they are sentenced and not when the offense was committed. *Id.* at *26. Third, the language requiring that the Act take effect as soon as possible shows Congress' intent to apply the Sentencing Reform Act's principle of sentencing defendants based on the Guidelines in effect when the defendant is sentenced and not when the offense was committed. *Id.* at *27. Fourth, the inability to apply the Act to pre-Act offenders would create a sentencing disparity that Congress intended to prevent, namely that two individuals in possession of either crack or powder cocaine would receive "radically different sentences." *Id.* at *29. Fifth, failing to apply Act Guidelines to pre-Act defendants would exacerbate the problem by creating new anomalies, i.e., disproportionate sentences. *Id.* at *30. Finally, the Supreme Court found that there were no strong reasons against applying the Act to pre-Act offenders. *Id.* at *34. In consideration of the above, the Supreme Court

concluded that "Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders." *Id.* at \*36.

In light of *Dorsey*, the district court erred when failing to apply the Act sentencing guidelines to Joseph, Moore, and Dunbar. Their cases must be remanded back to the district for resentencing in line with *Dorsey*.

## B. Dunbar

### 1. 404(b) Evidence

Dunbar argues that the district court erred in admitting the September 11 and 12, 2008 Rule 404(b) evidence and not giving a cautionary instruction to the jury. Dunbar also takes issue with the district court's admission of evidence of a related transaction on October 15, 2008. A prior Rule 404(b) notice was filed for the September acts, but not the October act. Dunbar contends that the applicable standard of review should be abuse of discretion because the district court had reason to be aware of the need to give cautionary instructions. Dunbar further argues that he did not have sufficient notice to make a contemporaneous objection to the admission of the evidence. The government asserts that the plain error standard of review applies because Dunbar failed to make a contemporaneous objection.

In *United States v. Davis*, this Court considered a conspiring defendant's objection to the admission of prior act evidence. 547 F.3d 520, 526 (6th Cir. 2008). The defendant objected to the admission of prior acts evidence and was overruled. *Id.* The *Davis* court noted that plain error review was not appropriate under the circumstances because, although the defendant did not make a contemporaneous objection to the admission, the defendant had brought the issue to the district

court's attention, by motion in limine, before the evidence was admitted. *Id.* at 528. Although Dunbar failed to make a contemporaneous objection to the admission of the evidence, he objected to the Rule 404(b) notice in advance of trial. The district court was put on notice that something could be wrong. The Court will examine the admission of evidence under abuse of discretion. *United States v. Davis*, 514 F.3d 596, 611 (6th Cir. 2008). A district court's decision to admit evidence "should remain undisturbed unless (we are) left with the definite and firm conviction that the district court clearly erred in its judgment after weighing the relevant factors, improperly applied the correct law, or inappropriately used the wrong legal standard." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 535 (6th Cir. 2005) (quoting *Shanklin v. Norfolk So. Ry. Co.,* 369 F.3d 978, 988 (6th Cir. 2004) (internal alterations omitted)). This Court applies the harmless error rule to evidentiary errors. *United States v. Baker*, 458 F.3d 513, 520 (6th Cir. 2006). This Court must determine whether "it was more probable than not that the error materially affected the verdict." *Id.* (quoting *United States v. Pugh*, 405 F.3d 390, 401 (6th Cir. 2005)).

Federal Rule of Evidence 404(b) precludes the admission of extrinsic evidence of prior bad acts to prove the defendant's criminal propensity. However, such evidence is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided the government gives reasonable notice in advance of trial. Fed. R. Evid. 404(b)(2). Admission of 404(b) evidence requires the district court to first determine if there is sufficient evidence "that the act occurred and that the defendant was the actor." *Huddleston v. United States,* 485 U.S. 681, 689 (1988); *United States v. Gessa*, 971 F.2d 1257, 1261- 62 (6th Cir. 1992). The next inquiry is whether the evidence is probative of a material issue. *Huddleston*, 485 U.S. at 686.

7

The district court must then determine whether the relevant matter is actually "in issue." *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991). The evidence "must deal with conduct substantially similar and reasonably near in time to the offenses" for which the defendant is tried. *Id.* Finally, the court must consider the probative value of the evidence and whether it is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. Fed. R. Evid. 403; *also Feinman*, 903 F.2d at 499. However, this inquiry is irrelevant and Rule 404(b) is not implicated when prior acts evidence "is part of a continuing pattern of illegal activity." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995).

Dunbar contends that the trial testimony directly contradicted the district court's finding that the September 11 and 12, 2008 drug buys were direct evidence of the conspiracy. Dunbar notes that the ATF agent admitted that the September drug buys were part of a separate investigation. The government counters that no Rule 404(b) cautionary instructions were required because the drug sales were evidence of a continuing pattern of criminal activity. The September drug buys being part of a separate investigation is irrelevant to whether they were direct evidence of the conspiracy itself or probative of intent. The drug buys occurred during the conspiracy in question and are of the same type of conduct that was at issue in the conspiracy. Regardless of whether the September drug buys were direct evidence of the conspiracy itself, they were probative of intent. The district court did not abuse its discretion by admitting the evidence of the September drug buys.

Dunbar contends that the district court erred in allowing the introduction of evidence of the October 15, 2008 drug buy. The government did not provide a 404(b) notice of the October drug buy as it had done with the September drug buys. However, the October drug buy with the

September drug buys could all be properly admitted as direct evidence of the conspiracy. As with the September drug buys, evidence of the October incident was also properly admitted as evidence of intent and, therefore, notice was not required. Introduction of that evidence was harmless. Finally, Dunbar argues that the district court should have provided a cautionary instruction for the 404(b) evidence. Dunbar failed to make a contemporaneous objection to the district court's failure therefore the Court will apply plain error review. *Davis*, 547 F.3d at 528. Because the September and October drug buys were direct evidence of the conspiracy itself as evidence of a "continuing pattern" of the same nature and type of criminal conduct, the district court was not required to give a cautionary instruction. There was no error.

### 2. Eighth Amendment

Dunbar argues that a mandatory life sentence for conspiracy to distribute 50 grams or more of cocaine is cruel and unusual punishment in violation of the Eighth Amendment when the charged offense was nonviolent and his prior convictions were also nonviolent. The Court must review constitutional challenges to a sentence *de novo*. *United States v. Graham*, 622 F.3d 445, 552 (6th Cir. 2010). A severe mandatory life sentence may be cruel but is not necessarily unusual in a constitutional sense. *See Harmelin v. Michigan*, 501 U.S. 957, 994 (1980). Case law is overwhelmingly against Dunbar's argument. *See Graham*, 622 F.3d at 452 - 53 (listing cases that have rejected such Eighth Amendment claims). However, in light of the recent holding in *Dorsey v. United States*, Dunbar's argument is moot.

9

## C. Joseph

### 1. Right to Fair Trial

Joseph contends that the district court abused its discretion and violated his right to due process and a fair trial by allowing the government to ask co-defendant Alvin Quarles a question beyond the scope of direct or cross examination and then permitting the government to call Agent Atkins to impeach this prior testimony, eliciting prejudicial hearsay. Specifically, on re-direct the government asked Quarles whether he had observed Joseph cooking crack cocaine even though Quarles had not been asked about Joseph on direct or re-direct. Quarles denied having observed Joseph so engaged, and the government asked whether he remembered telling the government that he had observed such activity. Joseph objected. Quarles did not answer the question. The government then called Agent Atkins to impeach Quarles by testifying that Quarles had stated that he observed Joseph cook crack cocaine. Joseph declined the district court's offer to give the jury a limiting instruction.

The admission of evidence is reviewed under the abuse of discretion standard. *Gibson v. United States*, 271 F.3d 247, 254 (6th Cir. 2001). However, "[t]o the extent that [a defendant's] claims sound in due process, we review them *de novo*." *United States v. Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007).

Joseph argues that the government offered Quarles' testimony as "mere subterfuge" to get otherwise inadmissible hearsay admitted as a prior inconsistent statement. Federal Rule of Evidence 613(b) allows a party to admit extrinsic evidence of a prior inconsistent statement "if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity

10

to examine the witness about it." Fed. R. Evid. 613(b). The prosecution cannot impeach a witness that it knows will give adverse testimony merely to get in evidence that would be otherwise inadmissible. *See Apanovitch v. Houk*, 466 F.3d 460, 485 (6th Cir. 2006); *United States v. Morlang*, 531 F.2d 183, 189 (4th Cir. 1975). The record does not support a finding that the impeachment testimony was provided merely to get in otherwise inadmissible evidence. Joseph has not offered any evidence that the government *knew* that Quarles would recant his story. Once Quarles testified that he had not said that he observed Joseph cook crack cocaine, the government could call Agent Atkins to testify to Quarles' prior inconsistent statement. This evidence was offered to impeach the witness and not as substantive evidence against Joseph. The district court offered to give the jury a limiting instruction, but Joseph declined the offer.

Nor does the admission of the evidence violate Joseph's right to due process and a fair trial. Joseph cites *United States v. Shoupe*, to support his proposition. 548 F.2d 636 (6th Cir. 1977). The *Shoupe* court held that "the recitation by the prosecutor of the entire substance of a witness's disavowed, unsworn prior statements, which, if credited by the jury, would be sufficient to sustain a conviction, abridged defendants' right to a fair trial." *Id.* at 643. The *Shoupe* court noted that the district court failed to provide any protections for the defendants in light of the evidence solicited. *Id.* at 644 (noting that one prior "trial court protected the rights of the accused by limiting the scope of impeachment" and another "determined in advance, through independent evidence, that the statements were reliable"). *Shoupe* is distinct from the present case. Here, the district court attempted to limit the scope of the impeachment evidence but Joseph declined the offer to provide a limiting instruction to the jury. Furthermore, the government used Agent Adkin's testimony to

impeach Quarles inconsistent testimony as opposed to attempting to testify for Quarles on the basis of a prior inconsistent statement, knowing that Quarles would give an inconsistent response. The statement that the witness observed Joseph cooking crack cocaine alone would not have sustained the conspiracy conviction. The Court does not find that Joseph's due process rights were violated.

### 2. Variance

Joseph argues for the first time on appeal that there was a variance because the evidence offered at trial was substantially different than the evidence charged in the indictment. In the alternative, Joseph contends that the indictment was constructively amended.

"A variance to the indictment occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006); *see United States v. Blackwell*, 459 F.3d 739, 762 (6th Cir. 2006) ("A variance occurs when an indictment alleges one large conspiracy but the evidence at trial establishes multiple conspiracies"). "[A] variance rises to the level of a constructive amendment when the terms of the indictment are in effect altered by presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997) (quoting *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986)). The Court reviews the record *de novo* to determine if there was a variance. *Caver*, 470 F.3d at 235. However, the Court will review the record for plain error if the issue of variance was not raised in the district court. *Id.* A variance is not reversible error unless the substantial rights of the defendant were

12

affected; but, a constructive amendment is *per se* prejudicial. *United States v. Solorio*, 337 F.3d 580, 590 (6th Cir. 2003). The substantial rights of a defendant are affected if the defendant was convicted based on a conspiracy that he did not participate in. *Blackwell*, 459 F.3d at 762.

Joseph bases his contention on the testimony of Trey Galbraith who testified that Joseph engaged in powder cocaine transactions in Clarksville, Tennessee. Joseph contends that he was surprised by the testimony because it was not alleged to be part of the conspiracy to distribute crack cocaine alleged in the indictment. The majority of the evidence presented against Joseph involved his participation in transactions involving powder cocaine, but there was evidence showing that powder cocaine is cooked into crack cocaine. Williams testified that he sold crack cocaine to Joseph and identified Joseph's voice on an audio recording requesting more crack cocaine. This evidence, coupled with other evidence presented at trial showing that Joseph was involved in the selling of powder cocaine in order to make crack cocaine, was sufficient to connect Joseph to the conspiracy absent Galbraith's testimony. The instructions asked the jury to determine whether there was a conspiracy in terms of cocaine base or crack cocaine. The evidence presented at trial was consistent with the evidence charged in the indictment. Joseph's substantial rights were not violated.

## D.     Moore

Moore argues that the district court erred in denying his motion for a new trial based on his claim that his Sixth Amendment right to confrontation was violated when the hearsay statement that Moore was a "crack cook" was offered to prove the truth of the matter asserted. The Court usually reviews the district court's denial of a motion for a new trial for abuse of discretion. *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995). However, given that Moore did not make a

contemporaneous objection to the complained of error, the Court will apply plain error review. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

In *Crawford v. Washington*, 541 U.S. 36, 53 - 54 (2004), the Supreme Court held that the Confrontation Clause of the Sixth Amendment does not allow the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." The statements of a confidential informant are testimonial and, therefore, may not be offered to establish the truth of the matter asserted unless the accused has an opportunity to cross examine the speaker. *United States v. Cromer*, 389 F.3d 662, 670 - 71 (6th Cir. 2004).

The confidential informant was not called to testify. However, Moore's co-defendant Dunbar attacked the confidential informant's credibility when he asked Agent Atkins whether she had provided information regarding the Defendant's connection to crack cocaine. Agent Atkins responded that the confidential informant had stated that Moore cooked crack cocaine. This statement appears to have been offered to show that the confidential informant gave reliable information and was in response to defense counsel's own questioning.

The statement, however, could be viewed as testimonial and, therefore, raise a *Crawford* issue. Regardless, any potential error was harmless in light of the other evidence, including Moore's own admission, establishing that Moore was connected to the conspiracy as a cook. *See United States v. Hayes*, 218 F.3d 615, 623 (6th Cir. 2000)(citing *Delaware v. Van Ardsdall*, 475 U.S. 673, 684 (1986)).

## III. CONCLUSION

**AFFIRMED IN PART and REMANDED** back to the district court for resentencing.