NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0200n.06

Nos. 13-5215/13-5217

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 11, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| DWAYNE MICHAEL JOSEPH, JR., | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| and | ) | DISTRICT OF KENTUCKY |
| | ) | |
| JAMES LAMONTE DUNBAR, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

OPINION

BEFORE: MERRITT and WHITE, Circuit Judges; HOOD, District Judge[*]

**HELENE N. WHITE, Circuit Judge.** After a jury convicted them of conspiracy to distribute 50 grams or more of cocaine base, Appellants-Defendants Dwayne Joseph (Joseph) and James Dunbar (Dunbar) were sentenced to 120 months and 240 months in prison, respectively. They appeal, arguing that their sentences were improperly enhanced based on two facts not submitted to the jury and proven beyond a reasonable doubt: the quantity of drugs attributable to each of them and their past criminal convictions. For the reasons discussed below, we **AFFIRM**.

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**FACTS**

In 2007, the Drug Enforcement Agency (DEA) received information that Donald and Demetrius Williams (Williams Brothers) were trafficking marijuana, cocaine, and crack cocaine in the Hopkinsville, Kentucky, area. The DEA's investigation revealed Dunbar's and Joseph's involvement in the Williams Brothers' operation. Agents made ten controlled purchases totaling 1.225 kilograms of cocaine base from drug dealers associated with the Williams Brothers, including two from Joseph. On June 9, 2009, a grand jury in Paducah, Kentucky, indicted Joseph, Dunbar, and nineteen other defendants on charges of conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Dunbar and Joseph were arrested later that month and pleaded not guilty at their arraignments.

On June 15, 2010, the Government filed an information and notice of intent to enhance both Dunbar's and Joseph's sentences pursuant to 21 U.S.C. § 851. Joseph's enhancement was based on his May 9, 2001 felony drug conviction of trafficking in a controlled substance within 1000 yards of a school; Dunbar's enhancement was based on his April 2, 2003 felony conviction for trafficking in controlled substances in the first degree and his February 8, 2006 felony conviction for trafficking in controlled substances within 1000 yards of a school.

The trial, which involved only Joseph, Dunbar, and one other defendant, Rodney Moore (Moore),[1] began in January 2011. The remaining defendants accepted plea agreements, many of which required them to testify against Joseph, Dunbar, and Moore. Demetrius Williams testified that he sold Joseph between 50 and 60 ounces (1.4175–1.700 kilograms) of crack cocaine, and Dunbar approximately 20 ounces (567 grams). Perry Rudd testified that he purchased 2.25 ounces of powder cocaine from Joseph. And, Ronnie Whaley testified that he sold Joseph a

---

[1] Rodney Moore manufactured or "cooked" the crack cocaine. Demetrius Williams estimated that Moore cooked 20 kilos of crack over the course of the conspiracy.

"brick," or 36 ounces (1.020 kilograms), of powder cocaine. The jury found Dunbar and Joseph guilty of conspiracy to distribute 50 grams or more of cocaine base.

Based on the evidence offered at trial, particularly the testimony of the co-defendants, the Presentence Investigation Report (PSR) attributed 20 ounces (567 grams) of crack cocaine to Dunbar, and 50 ounces (1.4175 kilograms) of crack cocaine and 36 ounces (1.02 kilograms) of powder cocaine to Joseph. The statute required a mandatory minimum term of 10 years. 21 U.S.C. § 841(b)(1). However, the 21 U.S.C. § 851 enhancements for Joseph's and Dunbar's prior convictions increased the minimum statutory sentence to 20 years' imprisonment for Joseph and life imprisonment for Dunbar. Joseph's base offense level, calculated pursuant to § 2D1.1(a)(5) of the United States Sentencing Commission Guidelines (Guidelines) was 34, with a criminal history category of III, resulting in a Guidelines range of 188 to 235 months' imprisonment. However, the application of the enhanced penalties resulted in a mandatory minimum term of 240 months' imprisonment as the advisory Guidelines sentence. Dunbar's base offense level was 37, with a criminal history category of VI, resulting in a Guidelines range of 360 months' to life imprisonment, with life imprisonment as the minimum enhanced advisory Guidelines sentence.

Before his first sentencing hearing, Joseph filed objections to the 240-month statutory mandatory minimum, arguing that the Fair Sentencing Act of 2010 (FSA)—which increased the amount of cocaine base necessary to trigger the higher 21 U.S.C. § 841(b)(1) penalties—applied to his case and thus his mandatory minimum sentence should be calculated pursuant to § 841(b)(1)(B),[2] not (b)(1)(A).[3] He also objected to the amount of drugs attributed to him.

---

[2] "Such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . . If any person commits such a violation after a prior

Dunbar argued that the FSA should apply to his case, objected to the amount of drugs for which he was held responsible, and asserted that the statutory mandatory minimum sentence of life imprisonment was a violation of the Eight Amendment.

Joseph and Dunbar were sentenced to 240 months' and life imprisonment, respectively. They appealed their sentences, arguing based on *Dorsey v. United States*, 132 S. Ct. 2321 (2012), that the more lenient penalties of the FSA apply to offenders whose crimes preceded the effective date of the Act, but who are sentenced after that date. This court vacated and remanded for resentencing. *United States v. Moore*, 495 F. App'x 680 (6th Cir. 2012). At Joseph's resentencing, the parties agreed that his statutory minimum sentence was 10 years,[4] and the Guidelines range, based on an offense level of 34 and a criminal history category of III, was 188 to 235 months' imprisonment. Dunbar and the Government agreed that his statutory minimum sentence was 120 months' imprisonment[5] and his Guidelines range was 360 months' to life imprisonment, based on an offense level of 37 and a criminal history category of VI.[6] Joseph and Dunbar requested and were given below-Guidelines sentences of 120 months' and 240 months' imprisonment, respectively.

---

conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment . . ."

[3] "Such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . . If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . ."

[4] Calculated pursuant to 21 U.S.C. § 841(b)(1)(B), the minimum takes into account Joseph's one prior felony drug conviction.

[5] Calculated pursuant to 21 U.S.C. § 841(b)(1)(B), the minimum takes into account Dunbar's two prior felony drug convictions.

[6] Dunbar was considered a career offender.

**DISCUSSION**

I.   **Attribution of Quantity of Drugs for Sentencing Purposes**

Joseph and Dunbar argue that despite being indicted and convicted by a jury for conspiring to distribute 50 grams or more of crack cocaine, at sentencing they were held responsible for 1.4175 kilograms and 567 grams of crack cocaine, respectively. This, they argue, is a violation of their Fifth and Sixth Amendment rights because it increased their potential sentences even though the quantities were not presented to a jury and proven beyond a reasonable doubt. The Government responds that sentencing enhancements based on the Guidelines, which is what is at issue here, can be determined by the sentencing court's findings, so long as the enhanced sentence is still within the statutory range.

This court "review[s] for clear error the district court's factual findings on drug quantity attributable to a defendant for sentencing purposes." *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (citing *United States v. Mahaffey*, 53 F.3d 128, 131 (6th Cir.1995)). "A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). Dunbar and Joseph argue that we should review their constitutional claims *de novo*. Although Joseph challenged the constitutionality of the drug-quantity determination in his sentencing memorandum, the Government points out that Dunbar did not make a constitutional challenge in the district court, and argues for plain-error review. The result is the same regardless whether our review is *de novo* or for plain error.

According to the Court,

> Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury.

*Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013) (internal citations omitted) (holding Defendant's minimum sentence could not be increased for brandishing a firearm where, based on jury instructions, jury convicted Defendant of the lesser offense of carrying, rather than brandishing, the firearm). However, Joseph and Dunbar do not challenge their minimum statutory sentences, which correlated to the drug quantity actually found by the jury—50 grams or more—but, rather, challenge sentencing enhancements that increased the Guidelines range. "[T]he amount of drugs must be submitted to a jury and proved beyond a reasonable doubt when a drug amount calculation either threatens a penalty that would pierce the ceiling authorized by the statute, or threatens a penalty that would raise the floor authorized by the statute." *United States v. Hough*, 276 F.3d 884, 890 (6th Cir. 2002) (internal citation omitted). Here, the court's drug-quantity determinations did neither. Therefore, the district court was permitted to "rely on any competent evidence in the record," *id*. at 891, to determine the drug quantity attributable to the Defendants for sentencing purposes "so long as [it] appreciate[d] that the guidelines are advisory, not binding," *United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006). The amount of drugs attributed to each defendant was determined based on the testimony of co-defendants, which the district court found credible, as well as other evidence, including controlled transactions with government agents and confidential informants. Further, the district court demonstrated its appreciation of the non-binding nature of the Guidelines by imposing below-Guidelines sentences.

**II.     Consideration of Past Convictions in Sentencing**

Joseph and Dunbar also argue that their Sixth Amendment rights were violated when the district court considered their prior criminal convictions to determine their sentencing enhancements based on 21 U.S.C. § 851 and the Guidelines.  They maintain that this court should review this issue *de novo* because they are challenging the constitutionality of the sentence.  The Government disagrees, arguing that Appellants forfeited this argument because neither previously objected to the § 851 notices and review should be for plain error.  Again, the result is the same without regard to which standard of review we apply.

The Government argues that *Almendarez–Torres v. United States*, 523 U.S. 224, 228–29 (1998)—which held that the Sixth Amendment does not require it to charge past convictions in the indictment and prove them to the jury beyond a reasonable doubt—is binding precedent.  Dunbar and Joseph acknowledge *Almendarez-Torres*, but argue that it may soon be overturned.  *See, i.e.*, Joseph Br. at 18.  Dunbar also questions *Almendarez–Torres* in light of *Alleyne*.  Dunbar Br. at 24.

> This court has rejected similar arguments.
>
> [Appellant's] contention that the holding in *Almendarez–Torres* has been whittled away, and that *Almendarez–Torres* has been overruled by implication, and is no longer good law, is unavailing.  Although *Almendarez–Torres* may stand on shifting sands, the case presently remains good law and we must follow it until the Supreme Court expressly overrules it.

*United States v. Nagy*, 760 F.3d 485, 488–89 (6th Cir. 2014) (internal quotation marks omitted) (citing *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013)); *see also United States v. Pritchett,* 749 F.3d 417, 434 (6th Cir. 2014) ("*Alleyne* did not disturb the holding in *Almendarez– Torres*").

Thus, the district court did not err in enhancing Joseph's and Dunbar's sentences based on a finding of past convictions without first submitting the factual question to a jury for determination beyond a reasonable doubt.

## **CONCLUSION**

For these reasons, we **AFFIRM** the sentences imposed by the district court.