NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0219n.06

No. 16-5407

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOE PEPPERS, as surviving natural parents and next of kin of Stewart Peppers, Deceased; NATASHA PEPPERS, as surviving natural parents and next of kin of Stewart Peppers, Deceased, | ) ) ) ) ) ) | **FILED** Apr 13, 2017 DEBORAH S. HUNT, Clerk |
| **Plaintiffs-Appellants,** | ) ) | |
| v. | ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| WASHINGTON COUNTY, TENNESSEE; CORRECTIONS OFFICER CORNETT, official capacity; CORRECTIONS OFFICER DRAPER, individual capacity; GARWIN, individual capacity, ED GRAYBEAL, individual capacity; JASON LOWE, individual capacity; CORRECTIONS OFFICER MARTIN, individual capacity; RICHARDS, individual capacity, | ) ) ) ) ) ) ) ) ) ) | **OPINION** |
| **Defendants-Appellees.** | ) ) | |

BEFORE: NORRIS, GIBBONS, and ROGERS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge. Stewart Peppers died while in custody at the Washington County, Tennessee, jail awaiting trial. His parents sued the county, as well as the sheriff and several corrections officers in both their individual and official capacities under 42 U.S.C. § 1983. After three years of pre-trial litigation, the district court granted summary judgment as to all defendants. The plaintiffs argue that the district court abused its discretion when it excluded the testimony of plaintiffs' key witness and granted summary judgment in favor of defendants. For the reasons that follow, we **affirm** the judgment of the district court.

**I.**

*A. Factual Background*

Stewart Peppers was arrested shortly after 2:00 a.m. on April 26, 2013, in possession of a handgun, more than forty grams of marijuana, and three hundred grams of Nandrolone Decanoate, a steroid. He was suspected of carjacking a woman at gunpoint and aggravated assault in which a man as severely beaten. Peppers was booked into Washington County Detention Center ("WCDC") shortly thereafter. Peppers was a large, muscular young man, and arresting officers warned the detention officers that Peppers may have martial arts training and that he may have been using synthetic drugs. Peppers behaved erratically from the start, acting "in an arrogant and aggressive manner towards the correctional officers," flexing his muscles, and blowing kisses at the booking officers. He also refused to give his real name, calling himself "Hercules," "chosen one," the "son of god," or the "son of Zeus."

Peppers was placed in a cell by himself in the booking center. His erratic behavior continued over the next two days, including tearing up his sleeping mat and uniform and yelling obscenities. A social worker saw Peppers for a mental health consultation, reporting that, "Peppers denied suicidal or homicidal thoughts or intentions at that time and did not exhibit aggressive or threatening behavior at that time." The conclusion was that Peppers did not meet the criteria to be committed.

A series of events ultimately leading to Peppers's death began late in the afternoon on April 29, 2013. Peppers started shouting obscenities at the detention staff. The plaintiffs claim that in response to the shouting six corrections officers entered the cell, used chemical spray and a Taser on Peppers, and beat him until he was unresponsive. While Peppers was unresponsive, he purportedly was loaded into a restraint chair and beaten further, for a total of twenty minutes.

The defendants assert that their initial response to Peppers becoming agitated and shouting obscenities was to try to calm him down from outside the cell. Only when Peppers began slamming his head into the door of his cell did the officers feel they needed to intervene. At that time, the officers entered the cell, but Peppers refused instructions and aggressively approached the officers. The officers deployed chemical spray and a Taser in an effort to subdue Peppers, but to little effect. Finally, after much struggle, the officers gained some control of Peppers, placing him in restraints and into a restraint chair and using a "spit hood" to prevent Peppers from spitting on the officers.

The officers contend that Peppers continued to buck and fight officers as they attempted to get him fully secured. But suddenly Peppers stopped resisting, made unusual respiratory noises, and became unresponsive. The officers first tried to revive him with an ammonia stick and a sternal rub technique. When that failed, he was taken out of the chair and treated with a manual resuscitator and CPR until emergency personnel arrived and took over his care. Peppers, however, died.

The medical examiner conducted an autopsy and determined that his death was accidental, caused by a condition called Excited Delirium, brought on by the misuse of Nandrolone Decanoate (a steroid), exogenous testosterone, and acute cannabinoid. R. 34-1, Cline-Parhamovich Aff., Ex. A, PageID 366. The plaintiffs' expert witness reviewed the autopsy result and averred that the actual cause of death was asphyxiation from the combination of restraint chair and spit hood. R. 66-1, Dragovic Aff., PageID 619.

*B. Procedural Background*

During the litigation, defendants filed a Motion for Summary Judgment as to all individual defendants based on the doctrine of qualified immunity, asserting that they did not

violate Peppers's constitutional rights. The district court denied this motion, citing genuine issues of material fact as to whether the individual corrections officers violated Peppers's clearly established rights. The district court noted that the affidavit of Shawn Dorsey, who was detained in a nearby cell at WCDC at the time of Peppers's death, was the plaintiffs' only evidence. But viewing the facts in the light most favorable to the plaintiffs for summary judgment purposes, the affidavit contents had to be treated as true and therefore qualified immunity was not appropriate.

The district court did grant summary judgment in favor of the county on the plaintiffs' failure-to-train claim, noting that the county presented some evidence that use-of-force training was provided, including use of the restraint chair, while the plaintiffs failed to offer any evidence to suggest that the training was inadequate, let alone so inadequate as to rise to the level of deliberate indifference.

The admissibility of deposition testimony by the plaintiffs' key witness, Shawn Dorsey, is the focus of plaintiffs' appeal. Plaintiffs hoped to have Dorsey, who was by then incarcerated in a federal prison in West Virginia, testify at trial via live video conference. However, that proved to be impracticable because the prison would not allow cameras into the facility. The district court granted plaintiffs' request to take Dorsey's trial testimony by a recorded video deposition instead. But at the last moment Dorsey refused to testify altogether.

The plaintiffs moved the district court to designate Dorsey's prior deposition testimony, taken by defendants during discovery, for use as proof at trial. The defendants opposed the motion, asserting that the deadline for designating depositions had passed and that the prior deposition testimony was inadmissible under the federal rules against hearsay.

The district court denied plaintiffs' motion to designate Dorsey's deposition testimony, holding that while plaintiffs could show good cause for their late designation, the testimony

constituted inadmissible hearsay under the federal rules of evidence. The district court reasoned that the testimony was inadmissible, in large part, because the defendants did not get a full and fair opportunity to cross-examine Dorsey about a recorded interview with plaintiffs' counsel played at his deposition where Dorsey admitted his desire to get revenge on the corrections officers.

The defendants moved the court to reconsider its denial of qualified immunity. Without the Dorsey testimony, the district court reversed itself and granted the defendants' motion for summary judgment based on qualified immunity.

## II.

### A. Deposition Testimony of Shawn Dorsey

"Generally, a district court's evidentiary rulings are reviewed for abuse of discretion." *United States v. Churn*, 800 F.3d 768, 774 (6th Cir. 2015) (quoting *United States v. Chalmers*, 554 F. App'x 440, 449 (6th Cir. 2014)). We review a grant of summary judgment de novo. *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012).

Deposition testimony from an unavailable witness may be used against a party, provided that "the party was present or represented at the taking of the deposition" and "it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying." Fed. R. Civ. P. 32(a)(1). Based on his refusal to testify, Dorsey qualifies as an "unavailable" witness. *See* Fed. R. Civ. P. 32(a)(4)(B) & (C).

The question whether Dorsey's deposition testimony is admissible then turns on its admissibility under the Federal Rules of Evidence. Hearsay means a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Usually

hearsay evidence is not admissible. Fed. R. Evid. 802. However, the rules of evidence provide several hearsay exceptions for unavailable witnesses. *See* Fed. R. Evid. 804. The exception at issue here is for "Former Testimony," which provides that hearsay testimony may be admitted if it "was given as a witness at a trial, hearing, or lawful deposition" and "is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1).

The district court initially rejected defendants' general contention that they did not have a similar motive or opportunity to cross-examine Dorsey at the deposition because it was taken during discovery. That did not end the district court's analysis, however.

At the beginning of defendants' deposition of Dorsey, counsel for the plaintiffs played part of a recording of Dorsey's prior statements to refresh his recollection of events. A full copy of the recording was given to defense counsel and admitted as an exhibit. On the full recording, Dorsey can be heard saying, "I ain't going to lie to you okay. I need to get my revenge heard. They been doing me all wrong these years. It's time for me to get one."

The district court noted that the defendants, through no fault of their own, did not hear the statement until the deposition was over, and therefore never had a full and fair opportunity to cross-examine Dorsey regarding the issue. The district court concluded that the defendants would "suffer great prejudice by the use of deposition testimony, the reliability of which has been directly called into question by the deponent's own statements learned after the fact with no other opportunity to develop this testimony or cross examine it due to the deponent's refusal to give subsequent testimony." "It is the plaintiffs' burden to offer admissible testimony to carry their burden of proof, and this deposition testimony is inadmissible hearsay."

6

The plaintiffs' appellate brief does not directly address the recording discovered by defendants after the deposition, despite it being relied upon by the district court as a key factor in its decision to exclude the evidence. Further, plaintiffs elected not to file a reply brief even after the defendants highlighted this argument in their response brief. The defendants contend that by failing to offer any argument as to how the district court's reasoning was an abuse of discretion, the plaintiffs have forfeited this issue on appeal. Defendants' argument is well-taken, but we will nevertheless review the merits of the district court's evidentiary ruling.

The district court did not cite Federal Rule of Evidence 403 in its opinion and order, but the court weighed the prejudice that would be suffered by defendants if the testimony were to be admitted, much like the balancing district courts must undertake when applying Rule 403. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."). On the other hand, it would be an abuse of discretion for a district court to weigh witness credibility and exclude proffered testimony on that basis. *See, e.g.*, *United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir. 1988) ("Witness credibility is solely within the province of the jury."); *Doe v. Clark Equip. Co.*, 187 F.3d 635 (6th Cir. 1999) (table case) (holding the district court abused its discretion in striking testimony based on witness credibility). In this case, if the district court was concerned about Dorsey's credibility, it had the option to admit his deposition testimony, and rely on defendants' ability to attack its credibility at trial. *See* Fed. R. Evid. 806 ("[T]he declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness . . . .")

However, as noted above, due to "a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a

7

district court's evidentiary rulings." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). "Assessing the probative value of the proffered evidence, and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." *Id.* (quotation omitted). "This is particularly true with respect to Rule 403 . . . ." *Id.* For example, we have upheld a district court's exclusion of otherwise relevant testimony based on the prejudice to defendants because the witness was unavailable for full cross-examination. *See United States v. Meade*, No. 15-5723, 2017 WL 384307, at *11 (6th Cir. Jan. 26, 2017) (affirming district court exclusion of probative "statement without any cross-examination to help the jury determine the strength of the statement and the credibility of the witness [because it] has a great risk of misleading the jury and unfairly prejudicing" the other party). "'Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overruled.'" *Id.* (quoting *United States v. Dixon*, 413 F.3d 540, 544 (6th Cir. 2005)).

Here, the district court was confronted with a difficult choice, given Dorsey's admission that his statement was motivated, at least in part, by a desire to get revenge on the defendants, and that defendants would have no ability to cross-examine Dorsey on this point. The district court's choice to exclude Dorsey's prior testimony was within the court's discretion. Finally, without the deposition testimony, the district court's grant of summary judgment was appropriate.

*B. Grant of Summary Judgment to Washington County*

In addition to appealing the district court's evidentiary ruling, the plaintiffs contend that the district court erred when it granted summary judgment in favor of Washington County. The plaintiffs' arguments below included general allegations that Peppers's death was based, at least

in part, on the failure of Washington County to properly train the involved corrections officers involved. However, the record does contain evidence that the officers received some use-of-force training, and the plaintiffs do not make any argument that the training received was deficient, or that inadequate training caused Peppers's death. For that reason, the district court's grant of summary judgment in favor of Washington County was proper.

## III.

The judgment of the district court is **affirmed**.